UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

THERESA HOOGLAND,                              )
                                               )
            Plaintiff,                         )
                                               )
v.                                             )      No.:   3:19-CV-383-TAV-DCP
                                               )
CITY OF MARYVILLE, TENNESSEE;                  )
MATTHEW WATSON, individually;                  )
ELIZABETH RIFFLE, individually;                )
SCOTT SPICER, individually;                    )
BLOUNT COUNTY, TENNESSEE;                      )
HAROLD WEEDEN, individually;                   )
DARIN GALLOW, individually;                    )
CHRISTOPHER "C.J." PIERCE, individually;       )
JUSTIN BECKMAN, individually; and              )
JOHN and JANE DOES 1-10,                       )
                                               )
            Defendants.                        )

**MEMORANDUM OPINION**

        This civil action is before the Court on defendants' motions for summary

judgment and to dismiss the complaint and plaintiff's motion to strike [Docs. 46,

51, 87, 91].   Regarding the motions for summary judgment, plaintiff initially filed

a response [Doc. 66-1] which requested the Court stay the deadline for response

pending resolution of other motions.   Defendants replied [Docs. 68, 70].   Because

plaintiff had not yet substantively responded to the motions, the Court ordered additional

briefing [Doc. 85].     Plaintiff responded [Doc. 86], and defendants replied

[Docs. 89, 90].[1]  Blount County, Tennessee then filed a motion to dismiss [Doc. 87]. Plaintiff did not respond, and the time for doing so has now passed. *See* E.D. Tenn. L.R. 7.1(a).  Plaintiff filed a motion to strike [Doc. 91], and Blount County responded [Doc. 92].

The motions are now ripe for resolution.  For the reasons that follow, the motions for summary judgment [Docs. 46, 51] and motion to dismiss [Doc. 87] will be **GRANTED**, the motion to strike [Doc. 91] will be **DENIED**, the Court will dismiss claims against the John and Jane Doe defendants, and this case will be **DISMISSED**.

## I.     Background

This case arises out of a series of events in September 2018.  Plaintiff's seventeen-year-old daughter called 911 one morning, saying that she found her adoptive mother missing from the home under unusual circumstances and that her mother had been having difficulties with her mental health, was expressing suicidal thoughts, and had a gun with her [Doc. 46, Ex. 5, 0:00–2:45].  The individual City Defendants responded to the home to assist the daughter [Doc. 46, Ex. 2, 0:00–2:00].  The daughter showed them an email the mother had sent that referenced violence and firearms and expressed suicidal thoughts [*Id*. 2:00–3:00].  The individual City Defendants requested a ping on plaintiff's cell phone [*Id*. 1:01:00–1:02:00], and the County Individual Defendants responded to that location

---

[1]  The Court notes that the defendants in this case have been classified thus far in three groupings: (1) the "City Defendants," comprised of the City of Maryville, Tennessee, Matthew Watson, Elizabeth Riffle, and Scott Spicer, each of whom worked for the Maryville Police Department, and (2) the "County Individual Defendants," comprised of Harold Weeden, Darin Gallow, Christopher "C.J." Pierce, and Justin Beckman, who worked for the Blount County Sheriff's Office, and (3) Blount County, Tennessee.  References to "defendants" without further specification refers to all defendants, or, if used in the analysis section, to the defendants whose motion the Court is addressing.

2

[Doc. 51, Ex. 11], took plaintiff into protective custody [*Id.*], requested that Officer Riffle conduct a search [Doc. 46, Ex. 4], and then transported plaintiff to a mental evaluation [Doc. 51, Ex. 11]. Plaintiff then filed this action.

Against the City Defendants, in any combination, plaintiff brings: Count One (§ 1983 claim for failure to protect and state-created danger in violation of the Fifth Amendment), Count Two (§ 1983 claim for wrongful search of plaintiff's home and person in violation of the Fourth Amendment), Count Three (§ 1983 claim for interference with the parent-child relationship in violation of the Fourteenth Amendment), Count Four (§ 1983 claim of *Monell* liability for failure to train), Count Fourteen (Tennessee Governmental Tort Liability Act/Negligence), and Count Sixteen (outrageous conduct/intentional infliction of emotional distress).

Against the County Individual Defendants, in any combination, plaintiff brings: Count Five (§ 1983 claim for excessive force in violation of the Fourth Amendment), Count Six (§ 1983 claim for wrongful seizure and failure to follow written policies in violation of the Fourteenth Amendment), Count Seven (§ 1983 claim for wrongful seizure due to lack of probable cause to detain plaintiff for psychiatric evaluation in violation of the Fourth and Fourteenth Amendments), Count Eight (§ 1983 claim for wrongful search and failure to follow written policies in violation of the Fourteenth Amendment), Count Nine (§ 1983 claim for excessive force in violation of the Fourteenth Amendment), Count Ten (§ 1983 claim for false arrest in violation of the Fourth Amendment),

3

Count Thirteen (assault and battery), Count Fourteen (Tennessee Governmental Tort Liability Act/Negligence), Count Fifteen (common law false arrest), and Count Sixteen (outrageous conduct/intentional infliction of emotional distress).

Against Blount County, plaintiff brings: Count Eleven for (§ 1983 claim for failure to train to follow policy), Count Twelve (§ 1983 claim for failure to train in procedures for detaining citizens for involuntary mental health evaluations), Count Thirteen (assault and battery), and Count Sixteen (outrageous conduct/intentional infliction of emotional distress).

Defendants now move to dismiss or for summary judgment on all claims.

## II.   Standards of Review

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party.  *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The moving party bears the burden of establishing that no genuine issues of material fact exist and may meet this burden by affirmatively proving their case or by highlighting the absence of support for the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003).

4

Yet, "[o]nce the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the nonmoving party must point to evidence in the record, including depositions, documents, affidavits, and other materials, upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also* Fed. R. Civ. P. 56(c)(1)(A). There must be more than a "mere scintilla of evidence" to withstand a motion for summary judgment, *Smith Wholesale Co. v. R.J. Reynolds Tobacco Co.*, 477 F.3d 854, 861 (6th Cir. 2007), and any genuine issue of fact must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248. The Court may not weigh the evidence; its role is limited to determining whether the record contains sufficient evidence from which a jury could reasonably find for the non-movant. *Id.* at 248–49. If a reasonable juror could not find for the nonmovant, the Court must grant summary judgment. *Celotex*, 477 U.S. at 323.

Defendant Blount County moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Federal Rule of Civil Procedure 8(a) sets out a liberal pleading standard. *Smith v. City of Salem*, 378 F.3d 566, 576 n.1 (6th Cir. 2004). Thus, pleadings in federal court need only contain "'a short and plain statement of the claim showing that

5

the pleader is entitled to relief,' in order to 'give the [opposing party] fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Id.* (alterations in original). "[A] formulaic recitation of the elements of a cause of action will not do," nor will "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555, 557).

In deciding a Rule 12(b)(6) motion, the court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *accord Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). This assumption of factual veracity, however, does not extend to bare assertions of legal conclusions, *Iqbal*, 556 U.S. at 679, nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief is ultimately "a context-specific task that requires [the Court] to draw on its judicial experience and common sense." *Id.* at 679. In conducting this inquiry, the Court "must construe the complaint in a light most favorable to plaintiff[], accept all well-pled

factual allegations as true, and determine whether plaintiff[] undoubtedly can prove no set of facts in support of those allegations that would entitle [her] to relief." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)).

### III.    Analysis

#### A.    Preliminary Matters

Though defendants filed separate summary judgment motions on behalf of each group, plaintiff filed a single response, including arguments as to both motions [Doc. 86]. The Court will therefore address matters relevant to both motions before addressing the defendants separately.

The Court previously ruled on the motions to strike, which the Court interpreted as motions in limine [Doc. 85]. Plaintiff here again asks for exclusion of the "suicide emails" as fruit of the poisonous tree [Doc. 86 p. 16]. Plaintiff states that in the absence of these emails, the motions "fall like a house of cards" and that nothing in the defendants' motions "justifies their violation of HIPAA and [the CFAA]" [*Id.*]. Plaintiff contends that even considering qualified immunity, the motions must fail since nothing else supported their searches or seizure of plaintiff [*Id.*]. However, plaintiff does not identify an exclusionary rule for violations of HIPAA and the CFAA. As to fruit of the poisonous tree regarding

alleged violations of the Fourth Amendment, as the Court will explain below, the searches and seizures were permissible.[2]

Furthermore, the Court has reviewed plaintiff's response to defendants' motions. The response suffers from one fatal flaw: it does not contain citations to any evidence that may support plaintiff's assertion that there are genuine disputes of material fact, instead citing only case law and the complaint.[3] As the County Individual Defendants state, "[a]t best, Plaintiff cited to 'See Doc. # ????' as a citation to the record" [Doc. 89 p. 2]. The

_____

[2] Plaintiff next contends that "if this Court finds the searches and seizures were proper, the emails in question and the statements of Plaintiff do not constitute a basis for her initial seizure or subsequent seizure as the emails do not indicate an imminent threat of harm to the Plaintiff herself or third-persons and as the statements made to law enforcement occurred after a highly traumatic, excessive force based, felony stop and arrest" and therefore the seizure lacked probable cause [Doc. 86 p. 16–17]. As noted by the City Defendants, "[p]laintiff in one sentence maintains that the seizure and search was proper yet was somehow also unsupported by probable cause" [Doc. 70 pp. 5–6]. Plaintiff then continues to argue excessive force in detaining plaintiff. She states that "it remains that nothing within [the emails] establishes probable cause the Plaintiff was eminently suicidal or homicidal," that she did not resist arrest, and that the seizure was therefore objectively unreasonable" [*Id.* pp. 17–18]. This section therefore is unclear as to which count it is meant to address, as it seems to make references first to search, then seizures, then excessive force, and perhaps false arrest. The Court interprets this section as arguing that the emails do not provide sufficient justification, under whatever appropriate standard, for defendants' actions. The video evidence as will be discussed elsewhere in this opinion and the suicide emails containing statements like "Arsenal in the bag. Now just thinking about what to do with it," "I'm in the 'killing fields,'" "I woke up, loaded into a bag everything to exit 'life,'" "'To die or not to die' that is the question, right now" and "Dr. The lifeless body in the foreboding, dark murky waters needs a 'life preserver,'" all support the officers' contention that plaintiff was suicidal, armed, and prepared to resist arrest [Doc. 51-3; Doc. 51-9].

Addressing plaintiff's argument, the County Individual Defendants reply that "[t]he fact that a *crime* was not involved does not change the calculus that the immediacy of threat and her actions supported that these defendants' actions were 'objectively reasonable'" [Doc. 89 p. 11]. The Court agrees. Therefore, to the extent that plaintiff asks the Court to discount this evidence as impermissibly obtained or insufficient to support defendants' motions, these arguments are rejected.

[3] The Court notes one instance where plaintiff states generally, "*See* Arrest Video" [Doc. 86 p. 17].

8

County Individual Defendants state "[a] party may not present a skeletal argument, leaving the court to put flesh on its bones" and that "with no or minimum citation to the record and case law, Plaintiff has done just that" [Doc. 68 p. 2 (citing *Davis v. Detroit Downtown Dev. Auth.*, 782 F. App'x 455, 458 (6th Cir. 2019))]. In some instances, plaintiff does not address defendants' arguments at all, and those claims can be considered abandoned. *Brown v. VHS of Michigan, Inc*., 545 F. App'x 368, 372 (6th Cir. 2013) ("This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment.").

As noted above, the Sixth Circuit has made clear that once defendants have met their burden to support a Rule 56 motion, plaintiff "is not entitled to a trial merely on the basis of allegations." *Universal Match Corp.*, 778 F. Supp. at 1423 (citing *Celotex*, 477 U.S. at 317).[4] "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). To establish a genuine issue of material fact, under Rule 56(c), plaintiff must point to evidence in the record, consisting of

---

[4] In the factual background section of the response, plaintiff refers to her declaration which attempts to incorporate by reference the complaint [Doc. 86 p. 1]. The Court finds this similarly relies solely on the allegations. "The nonmoving party cannot rest on its pleadings but must come forward with some probative evidence to support its claim." *Kraft v. United States*, 991 F.2d 292, 296 (6th Cir. 1993). To allow this declaration to qualify as a citation to evidence that satisfies Rule 56(c), plaintiff would be able to circumvent the requirements of the Rules and defeat summary judgment against her solely on the basis of the complaint.

9

depositions, affidavits, or other materials, that would allow a reasonable finder of fact to find in her favor. *Anderson*, 477 U.S. at 248; Fed. R. Civ. P. 56(c)(1)(A).[5]

Accordingly, plaintiff has failed to properly support or address facts as required under Rule 56(c), and the Court is permitted under Rule 56(e) to "consider the fact[s] undisputed for purposes of [this] motion" or "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e). Therefore, the task before the Court is to determine whether defendants are entitled to summary judgment in light of the undisputed facts and the materials in support of the motions. The Court will proceed in the order of the defendants' motions and briefing.

### B. City Defendants

Defendants argue that they are entitled to qualified immunity on all of plaintiff's § 1983 claims. The doctrine of qualified immunity protects government officials in discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*,

---

[5] The Court notes that to support her assertion that a fact is genuinely disputed, she may also "[show] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). Plaintiff has not met this burden either. To the extent plaintiff provides case law, it is consistent with defendants' citations and does not weaken defendants' arguments. Plaintiff at times argues that "no Defendant in this case has sufficient evidence" to show lack of genuine dispute [Doc. 86 p. 17], but the record proves to the contrary. Defendants cite to sufficient evidence and case law to prove that there are no genuine disputes of material fact as to all counts, and plaintiff's response does not show defendants' materials do not establish the absence of a dispute or that defendants cannot produce admissible evidence in support.

10

640 F.3d 716, 727 (6th Cir. 2011). Once a defendant raises qualified immunity, "the burden is on the plaintiff to demonstrate that the official[ is] not entitled to qualified immunity." *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006). Plaintiffs must show (1) "facts which, when taken in the light most favorable to [the plaintiff], show that the defendant-official's conduct violated a constitutionally protected right;" and (2) "that right was clearly established such that a reasonable official, at the time the act was committed, would have understood that his behavior violated that right." *Pittman*, 640 F.3d at 727. The order in which to address the two prongs is left to the Court's discretion. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

For the reasons discussed below, the defendants' conduct does not violate plaintiff's constitutionally protected rights. Plaintiff therefore cannot show that defendants are not entitled to qualified immunity, but the Court nonetheless will address the second prong and look to the state of the law at the time of the incident in question. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). To be considered clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). While the legal standards need not be so specific as to be directly on point, courts should look to precedents that are "particularized to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 551–52 (2017). The law is clearly established when the plaintiff can point either to "cases of controlling authority in his jurisdiction at the time of the incident" or "a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions

11

were lawful." *Kent v. Oakland Cty.*, 810 F.3d 384, 395 (6th Cir. 2016) (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)). "Existing precedent must have placed the statutory or constitutional question beyond debate. In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law." *Pauly*, 137 S. Ct. at 551 (quotations omitted).

Plaintiff does not identify any such precedents that would satisfy the second prong of the analysis. Defendants were fully in compliance with the case law outlined below. Defendants are therefore entitled to qualified immunity on § 1983 claims since plaintiff fails to establish both prongs.

### 1.     Failure to Protect and State-Created Danger

Defendants move for summary judgment as to Count One for failure to protect and state-created danger, allegedly in violation of the Fifth Amendment. Defendants state that plaintiff's theory is "that the actions of the City Defendants created the danger through the alleged excessive use of force by Blount County" [Doc. 47 p. 18]. To prove a state-created danger, plaintiff must show:

> 1) an affirmative act by the state which either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party;
>
> 2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and
>
> 3) the state knew or should have known that its actions specifically endangered the plaintiff.

*Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003). Furthermore, plaintiffs must show deliberate indifference. *Bukowski v. City of Akron*, 326 F.3d 702,

12

710 (6th Cir. 2003). The deliberate indifference standard sets "demanding rules" as to its two component parts. *Jane Doe v. Jackson Loc. Sch. Dist. Bd. of Educ.*, 954 F.3d 925, 933 (6th Cir. 2020). First, "[a]n official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference," and second, "[h]aving drawn the inference, the official next must act or fail to act in a manner demonstrating reckless or callous indifference toward the individual's rights." *Id.* (internal citations and quotations omitted).

Defendants state that plaintiffs are unable to fulfill the state-created danger elements, since plaintiff cannot prove non-governmental harm,[6] Blount County's use of force was reasonable and nonviolent, there is no evidence that the City Defendants created the danger, and there is no evidence defendants had the requisite culpability [Doc. 46 pp. 19–22]. The Court agrees and particularly highlights defendants' last point as to deliberate indifference.

Defendants state that "no information was conveyed by any Maryville Police Department officer that did not have evidentiary support" [*Id.* p. 21]. The Court has reviewed the bodycam footage and finds defendants' description of the videos to be accurate. Plaintiff's daughter told the officers that plaintiff had mental health issues, had stopped taking her medicine, owned a gun, the gun was missing from its usual location,

---

[6] "Although the elements of a state-created-danger cause of action vary slightly between the federal circuits, courts consistently require some third-party, nongovernmental harm either facilitated by or made more likely by an affirmative action of the state." *Mays v. Snyder*, 916 N.W.2d 227, 270 (Mich. Ct. App. 2018).

13

and that her behaviors were unusual or out of the ordinary.[7] Defendants expressed concern for plaintiff's welfare,[8] were precise, not overzealous, in their descriptions of the level of danger she posed to officers,[9] and were thoughtful in their approach to the request for help by plaintiff's daughter.[10] The Court therefore agrees that "[t]here is absolutely no evidence to suggest that Watson, Riffle or Spicer acted with callous disregard for the safety of the Plaintiff or that their actions were [conscience] shocking" [Doc. 47 p. 22].

Plaintiff responds that "[i]t shocks the conscience when you look at how the officers came to the conclusions and created the fabricated profile" [Doc. 86 p. 6]. Plaintiff then proceeds to cite to the complaint in support of that conclusion and outline the elements of this claim. Further, plaintiff appears to admit that a state-created danger must "spring from a source other than a state actor," also citing *Mays* [*Id.* p. 7]. Plaintiff however does not cite to evidence that would dispute or contradict defendants' evidence they have put forth, and the Court finds that a reasonable finder of fact could not find in plaintiff's favor. Accordingly, defendants are entitled to summary judgment on Count One.

---

[7] [Doc. 46, Ex. 2, 10:00 – 15:00].

[8] "That's really all we're really worried about is just checking the welfare of her and making sure she's alright" [Doc. 46, Ex. 2, 24:00–25:00].

[9] When people discuss the email sent to Mr. Barr which mentions that she has an "arsenal," officers clarify that the precise meaning of that term is unknown because the daughter only knows of a pistol. Watson stated that he knows she has a handgun, but "as far as any other guns I'm unsure" [Doc. 46, Ex. 2, 25:20–25:30]. Furthermore, after another mention of arsenal, Watson clarifies that only one known gun is missing [*Id.* at 18:40–18:55].

[10] The officers attempt to comfort the daughter and speak in calming tones [Doc. 46, Ex. 2].

14

### 2.    Wrongful Search

Defendants move for summary judgment as to Count Two for wrongful search of both plaintiff's home and person, in violation of the Fourth and Fourteenth Amendments. Defendants state that the warrantless search of plaintiff's home is permissible under the consent and exigent circumstances exceptions [Doc. 47 pp. 23–25].

First, the consent exception provides that "mature family members" may admit police to look around the home absent a clearly manifested intent by another family member to exclude others from an enclosed space. *United States v. Cork*, 18 F. App'x 376, 383 (6th Cir. 2001). The person who gives consent to search the family home need not be an adult: the Sixth Circuit has held that consent by twelve and fourteen-year-old children is valid. *United States v. Clutter*, 914 F.2d 775 (6th Cir. 1990).

As shown in the body-cam footage, plaintiff's daughter consented when Riffle asked if she would mind for the officers to double check that her mother was not in the house; the officers only looked in places large enough to fit an adult woman [Doc. 46, Ex. 2, 37:00–45:00]. There was no indication to the officers that plaintiff had clearly manifested intent to exclude others from any portion of the home. Further, plaintiff admits that her daughter gave permission to search the home and testified she wished the defendants had been more thorough by doing a "meaningful search" to locate the weapon [Doc. 46-6 pp. 40–41].

Second, the exigent circumstances exception allows warrantless entry and search when officers "reasonably believe that a person within is in need of immediate aid." *Mincey*

15

*v. Arizona*, 437 U.S. 385, 392 (1978). Here, it was reasonable for the officers to believe that plaintiff needed immediate aid based on the daughter's statements and plaintiff's emails. As defendants note, the search was "minimally intrusive" [Doc. 47 p. 25].

Plaintiff does not directly address the defendants' arguments regarding exceptions to the warrant requirement in the response. Instead, plaintiff argues that the Court should not consider the "illegally obtained evidence of Plaintiff's emails to her psychotherapist" since the evidence is "fruit of the poisonous tree" [Doc. 86 p. 16]. As the Court noted above, *supra* n. 2, the Court will consider this information.

As to Riffle's search of plaintiff at the church, defendants argue the search was properly conducted within the confines of *Terry v. Ohio*, 392 U.S. 1 (1968). *Terry* provides that to conduct a search, "[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent [woman] in the circumstances would be warranted in the belief that [her] safety or that of others was in danger." 392 U.S. at 27. Based on the information provided by plaintiff's daughter that the gun was missing from its usual location and the other circumstances surrounding plaintiff's disappearance that morning, it was reasonable for Riffle to believe plaintiff may be armed. While conducting a search, since the sole justification is the protection of the officer and others nearby, the search must be "confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." *Id*. at 29. The bodycam footage demonstrates that the search was brief and limited to patting down

16

plaintiff's outerwear [Doc. 46, Ex. 4].  Plaintiff does not address this search in her response [Doc. 86].

Overall, plaintiff's response does not provide evidence such that a reasonable finder of fact could find in her favor.  The Court finds that the search of plaintiff's home falls within the consent and exigent circumstances of the warrant requirement and therefore was not unconstitutional.  The search of her person was reasonable and limited in scope, as contemplated by *Terry*.  Defendants have therefore demonstrated that they are entitled to summary judgment on Count Two.

### 3.    Interference with Parent-Child Relationship

Defendants move for summary judgment on Count Three for interference with the parent-child relationship in violation of the Fourteenth Amendment [Doc. 47 p. 27].  Defendants state that the right to family integrity "has never been deemed absolute or unqualified." *Martinez v. Mafchir*, 35 F.3d 1486, 1490 (10th Cir. 1994).  Instead, family integrity is "counterbalanced by the compelling governmental interest in the protection of minor children, particularly in circumstances where the protection is necessary as against the parents themselves."  *Kottmyer v. Maas*, 436 F.3d 684, 690 (6th Cir. 2006) (citation omitted).  The Sixth Circuit held in *Kottmyer* that "mere investigations" into child abuse allegations do not "infringe upon a parent's right to custody or control of a child in the same manner.  Thus, none of the relevant cases suggest that mere investigation by the government of potential harm to a child infringes upon the familial association."  *Id.* at 691.  Defendants therefore argue that it follows that their response to the 911 call and

17

investigation at her residence, while not regarding child abuse allegations, similarly do not constitute an infringement on plaintiff's custody or control of her child [Doc. 47 p. 28].

Defendants were only involved at her home and in the brief search of plaintiff at the church. They note however that this incident was mentioned in a petition for an Order of Protection which forbid plaintiff from contacting her daughter for a year [Doc. 46-5 p. 8]. Defendants further note that they did not "inject[] themselves" into plaintiff's family, but rather were responding to a request for assistance from plaintiff's daughter [Doc. 47 p. 29]. They provided information to the Tennessee Department of Children's Services, but their decisions regarding custody, care, or control of plaintiff's daughter are "outside of the control of these Officers" [*Id*. p. 30].

Plaintiff's response does not address these arguments [Doc. 86]. Without evidence that would allow a finder of fact to find in plaintiff's favor, defendants are entitled to summary judgment on Count Three.

### 4. Failure to Train

Defendants move for summary judgment regarding Count Four against the City of Maryville, Tennessee for failure to train in violation of the Fourteenth Amendment [Doc. 47 p. 32]. To establish a municipal liability claim, the Court must determine whether plaintiff has been deprived of a constitutional right and whether the municipality is responsible for the violation. *Cash v. Hamilton Cty. Dep't of Adult Prob*., 388 F.3d 539, 542 (6th Cir. 2004). The Sixth Circuit has held that the "conclusion that no officer-defendant had deprived the plaintiff of any constitutional right a fortiori defeats the claim

18

against the [municipality] as well." *Scott v. Clay Cty., Tenn.*, 205 F.3d 867, 879 (6th Cir. 2000) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of unconstitutionally excessive force is quite beside the point.")).

As held in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978) a local government cannot be sued under § 1983 "for an injury inflicted solely by its employees or agents," but it may be held liable when the "execution of a government's policy or custom" that inflicts the injury. There must be an affirmative link between the policy and the violation alleged. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985). Further, "inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). "It is not enough for [plaintiff] to show that his injury could have been avoided if the officer had had more or better training." *Mayo v. Macomb Cty.*, 183 F.3d 554, 558 (6th Cir. 1999). The deliberate indifference standard "remains distinct from mere negligence. Where a city does create reasonable policies, but negligently administers them, there is no deliberate indifference and therefore no § 1983 liability." *Perez v. Oakland Cty.*, 466 F.3d 416, 430 (6th Cir. 2006). The training may be adequate, even if implementation was negligent. *Carey v. Helton*, 70 F. App'x 291, 294 (6th Cir. 2003).

19

As held above, the individual City Defendants did not deprive plaintiff of a constitutional right. Defendants state plaintiff "has submitted no proof outside the bare allegations contained in the Complaint to support her contention that the City failed to train any of the Defendant Officers or that such an alleged failure was the result of the City's deliberate indifference to the training" [Doc. 47 p. 33]. Plaintiff's two theories that the city failed to develop a policy to train officers regarding mental health crises and warrantless searches are contradicted by the record. Defendants provide the Court with an affidavit of the Chief of the City of Maryville, Tennessee Police Department which provides that the city has policies regarding training and evaluation of plaintiff's two problem areas [Doc. 46-3]. Plaintiff's complaint additionally states that defendants failed to abide by certain policies, but as stated above, even failure to follow these policies did not cause constitutional violations. There is no evidence that the city showed deliberate indifference to plaintiff's rights. Accordingly, there is neither an underlying constitutional violation nor justification to hold the municipality liable.

Plaintiff's response only cites case law regarding failure to train and citations to the complaint. Since defendants supported their case with appropriate facts, and plaintiff has failed to show that genuine dispute of those facts exist, defendants are therefore entitled to summary judgment on Count Four.

### C.    County Individual Defendants

The County Individual Defendants move for summary judgment on the grounds that they are entitled to qualified immunity as to all § 1983 claims. The Court incorporates its

20

prior discussion of the qualified immunity standards and concludes defendants are entitled to qualified immunity since plaintiff fails to prove constitutional violations or precedents that satisfy the second prong of the analysis.

### 1. Counts Six and Seven

Defendants move for summary judgment on Count Six for wrongful seizure in getting plaintiff out of her car and taking her for a mental health evaluation and Count Seven for wrongful seizure due to lack of probable cause to detain her for evaluation [Doc. 52 p. 19]. Defendants state that though labeled differently, these counts relate to the allegedly wrongful detention of plaintiff for a mental health evaluation and that all are governed by the "objective reasonableness" standard under the Fourth Amendment [*Id*. pp. 19–20 (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)]. Defendants therefore argue that they did not seize plaintiff in violation of her constitutional rights, they are entitled to qualified immunity, and they may not be held liable for violations of Blount County Sheriff's Office ("BCSO") policies and procedures.

Defendants argue that the seizure was not improper [Doc. 52 p. 20]. "The Fourth Amendment requires an official seizing and detaining a person for a psychiatric evaluation to have probable cause to believe that the person is dangerous to himself or others." *Monday v. Oullette*, 118 F.3d 1099, 1102 (6th Cir. 1997). A mental health seizure "can rest upon probable cause even when the person seized does not actually suffer from a dangerous mental condition. . . . Courts evaluate the existence of probable cause from the perspective of a reasonable and objective person in the position of the seizing official." *Id*.

21

The person's claims that they are not suffering from a mental health problem does not in itself defeat probable cause. *Id.* at 1103 ("Even if [defendant] had contacted the ex-wife and confirmed [plaintiff's claims], it still would have been reasonable for [defendant] to conclude that, given his information and the great potential harm at issue, an unacceptable risk remained that plaintiff was deceiving him in order to attain his apparently declared goal of committing suicide."). The Fourth Amendment analysis is an objective one of what a reasonable officer would have believed; subjective beliefs are "irrelevant." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

Defendants argue the "collective knowledge" or "fellow officer" rule supports their case [Doc. 52 p. 21]. "This doctrine recognizes the practical reality that effective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another." *United States v. Lyons*, 687 F.3d 754, 766 (6th Cir. 2012) (citing *United States v. Hensley*, 469 U.S. 221, 229 (1985)) (internal quotation omitted). The rule allows officers to rely in good faith on reports of other officers. To evaluate whether qualified immunity applies in these situations, courts consider "(1) what information was clear or should have been clear to the individual officer at the time of the incident; and (2) what information that officer was reasonably entitled to rely on in deciding how to act, based on an objective reading of the information." *Humphrey v. Mabry*, 482 F.3d 840, 848 (6th Cir. 2007).

Here, the collective knowledge rule establishes probable cause plaintiff was dangerous to herself or others and therefore there was no constitutional violation. Officer

22

Watson asked dispatch to have BCSO perform a welfare check.[11]  Dispatch then called BCSO to advise about the needed welfare check, telling of her location, that she had a handgun, and that she had sent messages she was going to commit suicide.[12]  All of this information was supported by probable cause based on the evidence collected that morning. Defendants reasonably relied upon this information, which was confirmed by plaintiff's own behavior, stating "you just f*****g shoot" thereby exhibiting continued suicidal thoughts [Doc. 51, Ex. 11, 12:47:54–12:48:00].

Plaintiff's response reiterates the probable cause standard and cites the complaint stating "[a]s set forth in the body-cam footage from the Sheriff;s [sic] deputies, no deputy at [sic] observed unusual, erratic, or disruptive behavior or that she was a danger to herself or to others" [Doc. 86 p. 12].  The record shows otherwise.  Throughout the video, plaintiff screams, snaps, and curses at officers, thrashing around, refusing to comply with orders [Doc. 51, Ex. 11; Doc. 46, Ex. 4].  The proof offered by the bodycam footage and the information relied upon from the City defendants provides probable cause to seize plaintiff for a mental health evaluation.

The Court also notes defendants' citations to cases with similar facts which support that defendants did not violate a clearly established constitutional right [Doc. 52 pp. 22–24 (citing *Dolbin v. Miller*, 786 F. App'x 52, 53 (6th Cir. 2019) ("Because it was not clearly established that an officer lacked probable cause to seize a suspect for a mental-health

---

[11]  [Doc. 51, Ex. 5, 15:20–16:49].

[12]  [Doc. 51, Ex. 6, 1:45–2:30].

23

evaluation based on a credible report that the suspect was actively suicidal"); *Zucker v. City of Farmington Hills*, 643 F. App'x 555, 565 (6th Cir. 2016) (finding that a reasonable officer would have found a probability that plaintiff would engage in dangerous behavior); *Hoover v. Walsh*, 682 F.3d 481, 500 (6th Cir. 2012) (finding probable cause that a person presented a danger to himself or others based on previous violence and threats of suicide))].

Further, defendants argue that they may not be held liable for violations of their own policies and procedures [Doc. 52 p. 24]. They state that *Davis v. Scherer* held that "[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision" and they may not be held liable for violations of their own regulations. 468 U.S. 183, 194 (1984). Even so, they state the written policies do not neatly apply to this situation, as it was rapidly evolving, and the plan was materially affected by plaintiff driving away from the stationary location in which she was located [Doc. 52 p. 24]. Plaintiff's response repeats the complaint, outlining the policies and highlighting which portions defendants allegedly violated, but plaintiff fails to demonstrate how these violations create a violation of her constitutional rights.

For these reasons, defendants are entitled to summary judgment on Counts Six and Seven.

### 2. Count Ten

Defendants move for summary judgment on Count Ten for false arrest because plaintiff was not arrested at all, having never been criminally charged or placed in jail

24

[Doc. 42 p. 25]. Further, defendants state the distinction between a seizure for mental-health evaluation and an arrest is immaterial [*Id*.]. Since an officer's state of mind is irrelevant to the existence of probable cause, the subjective reason for an officer's action "does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). Defendants argue they had objectively reasonable grounds to seize plaintiff, as determined above, and therefore the claim must fail [*Id*.].

Plaintiff's response states that plaintiff never committed any crime [Doc. 86]. The Court posits that defendants would agree. Plaintiff's response simply states that she was arrested and presents law that does not weaken defendants' arguments. Defendants therefore are entitled to summary judgment on Count Ten.

### 3. Count Five

Defendants move for summary judgment on Count Five for excessive use of force for using deadly force without cause or provocation [Doc. 52 p. 28]. "*[A]ll* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard" where the Court must inquire "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 395–97 (1989) (emphasis original). The reasonableness should be

25

judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396.

The Sixth Circuit has held that "when police officers reasonably fear that suspects are armed and dangerous, they may order the suspects out of a car and may draw their weapons when those steps are 'reasonably necessary for the protection of the officers.'" *Houston v. Clark Cty. Sheriff Deputy John Does 1-5*, 174 F.3d 809, 814–15 (6th Cir. 1999). Further, the Sixth Circuit expressed the following rationale for the distinction between showing force and using force:

> By giving [an officer] the ability to pull out and point a service revolver at someone without risking tort liability, he may be able to abort a potentially violent situation. Conversely, to subject such displays of force to second guessing by a jury may increase the likelihood that the officer will wait until the situation escalates further before drawing his gun, and thereby end up having to (or believing he has to) shoot to protect himself or others.

*Collins v. Nagle*, 892 F.2d 489, 497 (6th Cir. 1989) (citation omitted).

Defendants reasonably believed that plaintiff may have a gun and that she was willing to use it, based on the information provided by City Defendants and dispatch. When told to keep her hands up, plaintiff refused to do so, suggesting a continued threat [Doc. 51-10 p. 6]. Therefore, based on the perspective of a reasonable officer at the scene, defendants' actions were reasonable. Defendants further argue that coarse language does not defeat their argument [Doc. 52 p. 30]. After using non-offensive language to order plaintiff to put her hands up, she put them down again, at which point the officers used coarse language [Doc. 51, Ex. 11, 12:47:25–12:47:40]. Defendants argue that while "this

26

may seem abrasive," it was necessary to resolve the potentially violent and rapidly-evolving situation [Doc. 52 pp. 30–31].

Plaintiff's response states that no defendant has sufficient evidence to allow them to arrest her in that manner [Doc. 85 pp. 9–10]. She states that the officers did not follow their own policy and cites case law [*Id*.]. However, this response does not allow a reasonable finder of fact to find in her favor. Defendants are therefore entitled to summary judgment on Count Five.

### 4. Count Eight

Defendants move for summary judgment on Count Eight for wrongful search of plaintiff's vehicle and failure to follow BCSO policy [Doc. 52 p. 25]. Defendants argue that the search was reasonable under the inventory search exception to the warrant requirement.

Officers may impound a vehicle and conduct a search based on "standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *United States v. Kimes*, 246 F.3d 800, 805 (6th Cir. 2001). These searches "serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Colorado v. Bertine*, 479 U.S. 367, 372 (1987).

Here, plaintiff's vehicle was impounded after her detention for a mental health evaluation, and there was possibly a weapon in the vehicle [Doc. 52 p. 28]. Weeden's dashcam faces plaintiff's car. The video portrays officers searching plaintiff's car, flipping

27

through items in the trunk [Doc. 51, Ex. 11, 12:53:20–12:56:40]. An officer walks to the patrol car where plaintiff is sitting, identifies himself as C.J., and asks if there is a gun in the car [*Id*.]. This evidence suggests that the officers performed the search pursuant to standard criteria, attempting to remove the threat of the gun, with no indication of a criminal investigatory purpose. Accordingly, the search fits within the exception, and defendants did not violate plaintiff's rights in conducting a warrantless search.

Plaintiff's response does not address wrongful search of the vehicle. Accordingly, based on defendants' motion and supporting materials, they are entitled to summary judgment on Count Eight.

### 5.    Count Nine

Defendants move for summary judgment on Count Nine for excessive force for the manner in which they removed plaintiff from her car and handcuffed her [Doc. 52 p. 32]. Defendants cite two cases in support. In *Monday*, the officer used pepper spray against a mental health detainee when he "had reason to believe that the potential consequences of inaction would be serious" *Monday v. Oullette*, 118 F.3d 1099, 1104 (6th Cir. 1997). Further, in *Zucker*, the plaintiff was suspected of having mental health issues and was reported to have a gun. *Zucker v. City of Farmington Hills*, 643 F. App'x 555, 568 (6th Cir. 2016). When officers approached the apartment, they grabbed, tackled, and tased plaintiff. *Id*. The Sixth Circuit there held that was objectively reasonable because the officers reasonably suspected plaintiff was capable of violence and there was a high potential for him to grab a gun from his jacket or apartment. *Id*. at 568–69.

28

Applied here, the officers reasonably believed plaintiff posed a serious threat of harm, having received reports of her being armed and unstable. When removing her from the vehicle, the video shows plaintiff resisted, jerked back and forth, and attempted to avoid getting handcuffed [Doc. 51, Ex. 11, 12:47:50–12:48:05; Doc. 51-10 p. 7]. Defendants contend that since the officers used less force than in *Monday* and *Zucker*, the use of force was reasonable. The Court agrees.

Further, defendants argue that handcuffing plaintiff was an objectively reasonable use of force [*Id*. p. 33]. Defendants state that "the use of handcuffs minimizes the risk of harm to both officers" and plaintiff. *Muehler v. Mena*, 544 U.S. 93, 100, 125 (2005). To prove excessive force in a handcuffing case, plaintiff "must allege some physical injury from the handcuffing, and must show that officers ignored plaintiff's complaints that the handcuffs were too tight." *Lyons v. City of Xenia*, 417 F.3d 565, 575–76 (6th Cir. 2005) (citation omitted). Here, defendants decided to place plaintiff in handcuffs to minimize the risk to all involved [Doc. 52 p. 34]. While the videos demonstrate that plaintiff complained about the handcuffs being too tight, she has not presented proof of an actual injury. Further, the videos show that handcuffs were properly placed with sufficient room for an officer to place two fingers next to plaintiff's wrist [Doc. 51, Ex. 11, 12:55:20–12:55:50; Doc. 46, Ex. 4]. This was double checked after plaintiff complained [*Id*.]. The officers therefore did not ignore her requests, nor did they injure plaintiff. Their use of force was reasonable, and they did not violate plaintiff's constitutional rights.

29

Plaintiff's response [Doc. 86 p. 9] fails to support a finding of genuine issue of material fact since it does not point to evidence in the record or provide case law contrary to that which defendants presented. Defendants are therefore entitled to summary judgment as to Count Nine.

### D.    Blount County, Tennessee

Defendant Blount County filed a motion to dismiss [Doc. 87]. Plaintiff then filed a Motion to Strike [Doc. 91] because the motion did not comply with the Court's meet and confer requirements. Plaintiff states that no attorney for defendant contacted plaintiff's counsel and that the defect could "obviously" be cured with an amended pleading [*Id*.]. Plaintiff therefore asks for the motion to dismiss to be stricken or the motion to amend [Doc. 59], which was previously denied [Doc. 84], to be granted.

Defendant responds that it was not required to confer with plaintiff because the pleading deficiencies could not be cured since the Court had already ruled upon a prior motion to amend, which makes the order "inapplicable to the circumstances in this case" [Doc. 92]. Further, defendant notes that the order only states that motions shall be "subject to" being stricken, not that it "shall" be stricken [*Id*.].

The Court's order governing motions to dismiss [Doc. 5] is put in place to reduce the number of frivolous Rule 12 motions and the need for judicial intervention. In the typical case, this order promotes judicial economy, but the Court finds that the opposite would be true here. Every step of litigation in this matter has required the Court to intervene far more than the normal case. The Court finds that particularly given the

30

significant resources already expended toward litigating and resolving the motion to amend and the reasons for its denial, the meet and confer requirement will be waived and the Court finds it appropriate to consider the motion. The motion to strike [Doc. 91] is **DENIED**.

Defendant Blount County moves to dismiss Counts Eleven and Twelve for failure to train under Rule 12(b)(6) for failure to state a claim upon which relief may be granted [Doc. 87]. Defendant argues that plaintiff has not alleged sufficient facts to state these claims and plaintiff's assertions that there was a failure to train is conclusory [Doc. 88 p. 9–10]. However, the Court need not address these arguments, as the claims must be dismissed for more preliminary reasons.

First, plaintiff did not respond to the motion. As set forth in the Local Rules, "[f]ailure to respond to a motion may be deemed a waiver of any opposition to the relief sought." E.D. Tenn. L.R. 7.2.

Second, as previously held, the County Individual Defendants are entitled to summary judgment on all claims because they did not commit constitutional violations. Accordingly, this "defeats the claim against the County as well." *Scott v. Clay Cty., Tenn*., 205 F.3d at 879 (dismissing failure to train claims against the county when the officers did not deprive plaintiff of any constitutional right).

Plaintiff's response to the City and County Individual Defendants' motions for summary judgment mentioned Counts Eleven and Twelve [Doc. 86 pp. 14–15]. Plaintiff outlines the relevant law and then simply states "while the Bounty [sic] County Sheriff's Office had policies and procedures in place the Sheriffs at the church with the Plaintiff

31

trampled on those policies and procedures and by their acts and omissions clearly were not adequately trained by the Blount County Sheriff's Office" [*Id*. p. 15]. Plaintiff states the Sheriff's Office did not discipline the officers and therefore joined in the unconstitutional acts, and that the Sheriff's Office is therefore liable to plaintiff [*Id*.].

However, this does not change that there was still no underlying offense. Nor does it specify how the complaint states a claim. Accordingly, Counts Eleven and Twelve must be dismissed.

### E. *Sua Sponte* Dismissal of John and Jane Doe Defendants

Finally, the Court raises *sua sponte* the statute of limitations as it relates to the John and Jane Doe defendants. The statute of limitations applicable to a § 1983 action is the state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises. *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). Tennessee's statute of limitations for personal injury claims and for claims brought under federal civil rights statutes such as § 1983 is one year. *See* Tenn. Code Ann. § 28–3–104(a); *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005). The statute of limitations generally begins to run when "the plaintiff knows or has reason to know of the injury which is the basis of the action." *Kovacic v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 606 F.3d 301, 307 (6th Cir. 2010) (quoting *Kuhnle Bros., Inc. v. Cty. of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997)). The Court looks "to what event should have alerted the typical lay person to protect his or her rights." *Eidson*, 510 F.3d at 635 (quoting *Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir. 1991)).

32

The events giving rise to this case occurred in September 2018. The naming of John and Jane Doe defendants in plaintiff's September 2019 complaint does not stop the statute of limitations from running or toll the limitations period as to those defendants. *See Cross v. City of Detroit*, No. 06-11825, 2008 WL 2858407, at *1 (E.D. Mich. July 23, 2008) (citing *Garvin v. City of Philadelphia*, 354 F.3d 215, 220 (3rd Cir. 2003)). Plaintiff has not attempted to amend her complaint to name the John and Jane Doe defendants, and plaintiff's claims against the John and Jane Doe defendants are **DISMISSED *sua sponte*, with prejudice**. *See id.* (dismissing *sua sponte* and with prejudice the plaintiff's claim against John Doe police officer for civil rights violations because the plaintiff "did not seek leave to amend the Complaint to name the John Doe defendant prior to the expiration of the statute of limitations"); *see also Smith v. City of Akron*, 476 F. App'x 67, 69 (6th Cir. 2012) (holding that Rule 15(c) of the Federal Rules of Civil Procedure offers no remedy when, like here, plaintiff "simply did not know whom to sue or opted not to find out within the limitations period" and "waited until the last day of the . . . limitations period to file his complaint, [which] left no time to discover the identity of his arresting officers within the relevant time"); *Eady v. Young*, No. 4:12-CV-28, 2013 WL 11328159, at *4 (E.D. Tenn. Feb. 6, 2013) (stating that Rule 15(c) allows relation back for the mistaken identification of defendants, not for "John Doe" defendants).

### F. Supplemental Jurisdiction

While a district court has supplemental jurisdiction over state-law claims forming "part of the same case or controversy" as claims over which the court exercises original

33

jurisdiction, 28 U.S.C. § 1367(a), a district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. *Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009) (citing 28 U.S.C. § 1367(c)(3)). Because the Court will dismiss all of plaintiff's claims arising under federal law, it will also decline to exercise supplemental jurisdiction and **DISMISS without prejudice** plaintiff's state law claims.

## IV. Conclusion

For the reasons set forth above, the City and County Individual Defendants are entitled to summary judgment on all claims, and the claims against Blount County and John and Jane Doe defendants must be dismissed. The defendants' motions [Docs. 46, 51, 87] will be **GRANTED**; plaintiff's motion to strike [Doc. 91] will be **DENIED**. The federal claims will be **DISMISSED with prejudice**; state claims will be **DISMISSED without prejudice**. There being no remaining claims before the Court, the Clerk of Court will be **DIRECTED** to close the case. A separate order will follow.

ENTER:

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE